

OFFICE *of the* ATTORNEY GENERAL
GREG ABBOTT

January 10, 2003

The Honorable Robert Duncan
Interim Chair
Natural Resources Committee
Texas State Senate
P. O. Box 12068
Austin, Texas 78711

Opinion No. GA-0009

Re: Whether the wealth-reduction provisions of chapter 41 of the Texas Education Code apply to that portion of local property tax revenues attributable to a school district's tax rate in excess of $1.50 per $100 valuation (RQ-0562-JC)

Dear Senator Duncan:

Your predecessor in office asked whether the wealth-reduction provisions of chapter 41 of the Texas Education Code would apply to the portion of a public school district's local property tax revenues resulting from the district's adoption of a tax rate for maintenance and operations in excess of $1.50 per $100 valuation.[1] *See* TEX. EDUC. AUX. LAWS art. 2784g (Vernon 2003) [Act of May 14, 1953, 53d Leg., R.S., ch. 273, 1953 Tex. Gen. Laws 710, *amended by* Act of Feb. 12, 1959, 56th Leg., R.S., ch. 7, 1959 Tex. Gen. Laws 14]. His request concerned the Deer Park Independent School District, which in 1955 was authorized by its voters pursuant to article 2784g to adopt a maintenance and operations tax rate of up to $2.00 per $100 valuation,[2] and which is subject to the provisions of Texas Education Code, chapter 41 providing for the reduction of a school district's "wealth per student" in excess of a statutory cap. *See* Request Letter, *supra* note 1, at 2. If the district chooses to reduce its wealth per student by increasing its student count, an increase in the school district's tax rate over $1.50 per $100 valuation will increase the cost of this method of wealth reduction. *See* TEX. EDUC. CODE ANN. § 41.093(a) (Vernon Supp. 2003). However, if the school district chooses to reduce its wealth by decreasing its taxable property, this increase in the district's tax rate will have no impact on its wealth reduction.

Your predecessor asked whether the chapter 41 provisions on wealth-reduction "apply to that portion of a public school district's local property tax revenues" attributable to application of a tax

---

[1]Letter from Honorable J. E. "Buster" Brown, Chair, Natural Resources Committee, Texas State Senate, to Honorable John Cornyn, Texas Attorney General (May 3, 2002) (on file with Opinion Committee) [hereinafter Request Letter].

[2]Brief from David Thompson, Bracewell and Patterson, to Honorable John Cornyn, Texas Attorney General (Aug. 21, 2002) (enclosing order declaring result of bond and maintenance tax election of Deer Park Independent School District) (on file with Opinion Committee).

rate for maintenance and operations in excess of $1.50 per $100 valuation. *See* Request Letter, *supra* note 1, at 1. This question requires us to examine chapter 41 and its legal background in some detail.

Texas school districts rely on local property taxes for significant amounts of funding, and, in consequence, differences in the value of taxable property within different school districts raised constitutional questions addressed by the Texas Supreme Court in the *Edgewood* cases. *See Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717 (Tex. 1995) [hereinafter *Edgewood* IV]; *Carrollton-Farmers Branch Indep. Sch. Dist. v. Edgewood Indep. Sch. Dist.*, 826 S.W.2d 489 (Tex. 1992) [hereinafter *Edgewood* III]; *Edgewood Indep. Sch. Dist. v. Kirby*, 804 S.W.2d 491 (Tex. 1991) [hereinafter *Edgewood* II]; *Edgewood Indep. Sch. Dist. v. Kirby*, 777 S.W.2d 391 (Tex. 1989) [hereinafter *Edgewood* I]. The school finance laws were held unconstitutional in 1989 because they did not provide for "an efficient system of public free schools" as required by article VII, section 1 of the Texas Constitution. *See Edgewood* I at 777 S.W.2d at 393. The system did not provide for the "general diffusion of knowledge" required by article VII, section 1, and, because of its heavy reliance on property taxes, it was "financially inefficient." *See Edgewood* IV, 917 S.W.2d at 730; *Edgewood* I, 777 S.W.2d at 397. Property-rich districts could generate substantial revenues at low tax rates, while property-poor districts had to tax at high rates "merely to spend low." *Edgewood* I, 777 S.W.2d at 393.

In 1993, the Texas Legislature adopted Senate Bill 7, which included the predecessor of Education Code chapter 41, to deal with the funding inequities addressed in the *Edgewood* cases. *See* Act of May 28, 1993, 73d Leg., R.S., ch. 347, § 1.01, 1993 Tex. Gen. Laws 1479 (adopting Education Code chapter 36); *see also* Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 1, 1995 Tex. Gen. Laws 2207, 2384 (recodifying Education Code chapter 36 as Education Code chapter 41). In *Edgewood* IV, the Texas Supreme Court upheld the funding system adopted by Senate Bill 7. *See Edgewood* IV, 917 S.W.2d at 725.

The provisions adopted by Senate Bill 7, as amended, provide for a two-tier structure for public school finance. *See* TEX. EDUC. CODE ANN. § 42.002(b) (Vernon Supp. 2003). Tier one provides a basic allotment per student for school districts that levy a maintenance and operations tax at an effective tax rate[3] of at least $.86 per $100 property valuation. *See id.* § 42.252. Tier two, the "guaranteed yield" system, provides school districts with the opportunity to supplement the basic program. For each cent of additional tax effort beyond the effective rate of $.86 up to $1.50, the state guarantees a specific amount per student based on the school district's weighted average daily attendance.[4] *See id.* § 42.302; *Edgewood* IV, 917 S.W.2d at 728. There are separate provisions for funding school facilities. *See* TEX. EDUC. CODE ANN. §§ 46.003, .032 (Vernon Supp. 2003).

---

[3]The "effective tax rate," computed according to the method set out in section 26.04 of the Tax Code, is the tax rate that when imposed upon the property taxed last year but using this year's appraised values, will produce approximately the same amount of revenue that was produced last year. *See* Tex. Att'y Gen. Op. Nos. DM-155 (1992) at 2 n.2; JM-641 (1987) at 1.

[4]The "weighted average daily attendance" is determined according to Education Code section 42.302(a). *See* TEX. EDUC. CODE ANN. §§ 41.001(3), 42.302(a) (Vernon Supp. 2003).

In addition, chapter 41 imposes a cap on a school district's "wealth per student," defined as the taxable value of property divided by the number of students in weighted average daily attendance. *Id.* § 41.002(a); *see also id.* § 41.001(2). As of September 1, 2002, "[a] school district may not have a wealth per student that exceeds $305,000." *Id.* § 41.002(a); Act of May 28, 2001, 77th Leg., R.S., ch. 1187, § 2.03, 2001 Tex. Gen. Laws 2667, 2678.[5] Chapter 41 of the Education Code requires the reduction of funds in excess of the cap to prevent the disparities in wealth among school districts that had previously made the school financing system unconstitutionally inefficient. *See Edgewood* I, 777 S.W.2d at 397. School districts that have a "wealth per student" in excess of the statutory amount have five voluntary options under Education Code section 41.003 to reduce their wealth per student. *See* TEX. EDUC. CODE ANN. § 41.003 (Vernon Supp. 2003). These options are: consolidation with another district, detachment of territory, purchase of average daily attendance credits, education of nonresident students, and tax base consolidation with another district. *See id.* If a district does not voluntarily reduce its wealth per student, the commissioner is required to detach property from it and annex it to another school district, or if detachment will not reduce the district's wealth per student to a level equal to or less than the equalized wealth level, the commissioner shall order the consolidation of the district with one or more other districts. *See id.* § 41.004(b); *see also id.* §§ 41.201-.213 (Vernon 1996) (subchapter G, detachment of property), 41.251-.257 (Vernon 1996 & Supp. 2003) (subchapter H, consolidation).

School districts are subject to section 45.003 of the Education Code, which provides that they may levy annual ad valorem taxes to pay the principal of and interest on bonds and to provide "for the further maintenance of public schools," if authorized to do so by an election held for that purpose. *See* TEX. EDUC. CODE ANN. § 45.003(a), (d) (Vernon Supp. 2003). The rate of tax for paying the principal and interest on bonds may not exceed $.50 per $100 valuation of taxable property in the district, while the rate for maintenance taxes may not exceed $1.50 per $100 of valuation. *See id.* §§ 45.003(d), .0031. Section 2784g, however, provides that a school district with all or the major portion of its territory located within a county of a population of 700,000 or more

> shall have the power, when authorized by an election held for that purpose, to levy, assess and collect an ad valorem tax to pay the current interest and maturities of bonds issued and to be issued by the district and for the further maintenance of the public free schools therein of not exceeding Two ($2.00) Dollars on the One Hundred ($100.00) Dollars valuation of all taxable property located in such school district or having its taxable situs therein.

*See* Act of May 14, 1953, 53d Leg., R.S., ch. 273, § 1, 1953 Tex. Gen. Laws 710, *amended by* Act of Feb. 12, 1959, 56th Leg., R.S., ch. 7, 1959 Tex. Gen. Laws 14.

Thus, pursuant to this statute, Deer Park's tax rate for maintenance tax and the interest and sinking fund combined may reach $2.00 per $100 valuation of taxable property. Deer Park is

---

[5]Proposed legislation would increase the equalized wealth level to $330,000. *See* Tex. H.B. 251, 78th Leg., R.S. (2003) (introduced).

considering a maintenance and operation tax rate in excess of $1.50, and, because it has a wealth per student in excess of the maximum level permitted by section 41.002(a), it wishes to know whether tax revenues generated by increasing its tax rate over $1.50 would be subject to the wealth reduction provisions. *See* Request Letter, *supra* note 1, at 2.

Three of the five methods for reducing taxable wealth in excess of $305,000 per student are not affected by the school district's tax rate. These are the options that affect the district's property value: consolidation with another district, detachment of territory, or tax base consolidation with another district. *See* TEX. EDUC. CODE ANN. §§ 41.031-.065 (Vernon 1996) (subchapters B-C), 41.151-.160 (subchapter F). In contrast, the options that increase a district's student count – the purchase of attendance credits and the education of students from outside the district – do take the tax rate into consideration.

A school district with a wealth per student in excess of the statutory cap may agree with the commissioner of education to purchase sufficient attendance credits, in combination with any other action taken under chapter 41, to reduce the district's wealth per student to the required level. *See id.* § 41.091. The cost of an attendance credit is an amount equal to the greater of:

> (1) the *amount of the district's maintenance and operations tax revenue* per student in weighted average daily attendance for the school year for which the contract is executed; or

> (2) the amount of the statewide district average of maintenance and operations tax revenue per student in weighted average daily attendance for the school year preceding the school year for which the contract is executed.

*Id.* § 41.093(a) (Vernon Supp. 2003) (emphasis added).[6] The per credit cost under section 41.093(a)(1) of the Education Code is the amount of maintenance and operations tax revenue per student in weighted average daily attendance, and no limitation is placed on the tax rate or the provision under which the rate is set. Accordingly, if Deer Park adopts a tax rate in excess of $1.50 per $100 valuation under article 2784g, it must use the total amount of tax revenue produced by its tax rate, not merely the revenue generated by a rate of up to $1.50 per $100 property valuation, to compute the cost of an attendance credit. Thus, increases in the tax rate over $1.50 per $100 valuation under article 2784g will be reflected in the cost per credit computed according to section 41.093(a)(1), and Deer Park will not be able to keep all of the revenues generated by the part of its tax rate in excess of $1.50 per $100 valuation.

If Deer Park chooses to reduce its wealth per student by educating students from other school districts, the adoption under article 2784g of a maintenance and operations tax rate in excess of $1.50

---

[6]In practice, school districts subject to chapter 41 have had to use only the section 41.093(a)(1) method of calculation to determine the cost of an attendance credit. *See* Brief from David A. Anderson, General Counsel, Texas Education Agency, to Honorable John Cornyn, Texas Attorney General (July 29, 2002) (on file with Opinion Committee).

per $100 valuation would also mean that some of the additional tax revenues would be allocated to educating these students. Under section 41.121 of the Education Code, the board of trustees of a district with a per-student wealth that exceeds the statutory cap may agree with another district to educate its students in a number sufficient, when combined with any other action taken by the school district, "to reduce the district's wealth per student to a level that is equal to or less than the equalized wealth level." *See id.* § 41.121 (Vernon 1996). The agreement is not effective unless the commissioner of education certifies that it requires "an expenditure per student in weighted average daily attendance *that is at least equal to the amount per student in weighted average daily attendance required under Section 41.093,*" unless the commissioner determines that a quality educational program can be delivered at a lesser amount. *Id.* (emphasis added); *see also id.* § 41.122 (agreement under section 41.093 is subject to voter approval). Thus, unless the commissioner approves a lesser amount, the school district's expenditure per transfer student in weighted average daily attendance must at least equal the cost per credit calculated under section 41.093. Under section 41.121(a), Deer Park will not transfer funds to another district, although some of its resources will be used within the Deer Park district to educate the students who transfer from another district. To the extent that Deer Park uses the increased revenues to educate students from other districts pursuant to section 41.121, that portion of the increase will be subject to wealth reduction under that provision. *See also* TEX. EDUC. CODE ANN. § 41.124 (Vernon Supp. 2003) (alternative procedure for educating transfer students from another district).

We conclude that if Deer Park reduces its wealth per student by increasing the student count under section 41.091 or 41.121 the adoption of a maintenance and operations tax rate pursuant to article 2784g in excess of $1.50 per $100 valuation would mean that some of the revenues attributable to the part of the tax rate that exceeds $1.50 per $100 valuation would be subject to the reduction in wealth provisions of Education Code, chapter 41. The actual increase in outlay resulting from a specific increase in tax rate may be computed by applying the relevant formulas set out in chapter 41 of the Education Code.

The request letter also noted that the Texas Supreme Court referred to article 2784g in discussing the constitutionality of supplementing local school district programs with local funds. *See* Request Letter, *supra* note 1, at 2. The court determined that, as long as efficiency was maintained, it was not unconstitutional for a district to supplement its programs with local funds, even if the local funds were neither matched by state dollars nor subject to recapture. *See Edgewood IV*, 917 S.W.2d at 732. It cautioned, however, that

> the amount of "supplementation" in the system cannot become so great that it, in effect, destroys the efficiency of the entire system. The danger is that what the Legislature today considers to be "supplementation" may tomorrow become necessary to satisfy the constitutional mandate for a general diffusion of knowledge.

*Id.* Noting that a number of Texas Education Code Auxiliary Laws permitted some districts to levy a maintenance and operations tax in excess of $1.50 per $100 property valuation, the court expressly

mentioned article 2784g. It stated:

> These laws pose no threat to the constitutionality of Senate Bill 7. Once all districts are provided with sufficient revenue to satisfy the requirement of a general diffusion of knowledge, allowing districts to tax at a rate in excess of $1.50 creates no constitutional issue. Districts that choose to tax themselves at a higher rate under these laws are, under this record, simply supplementing an already efficient system.

*Id.* at 733 (citations omitted). Thus, the court found that article 2784g did not raise a constitutional issue, although it acknowledged that supplementation provisions could do so if supplementation destroyed the efficiency of the public school funding system. Whether supplementation avoids constitutional issues, however, is a separate question from whether, and to what extent, the chapter 41 wealth reduction provisions apply to additional revenues from a tax rate in excess of $1.50 per $100 valuation of taxable property.

## S U M M A R Y

The Education Code authorizes school districts to set a tax rate for maintenance and operations that is not to exceed $1.50 per $100 valuation of taxable property. Under article 2784g of the Texas Education Code Auxiliary Laws, the Deer Park Independent School District has been authorized by its voters to sct its tax rate for maintenance tax and the interest and sinking fund combined at $2.00 per $100 valuation of taxable property, and Deer Park is considering raising its maintenance and operations tax above $1.50 under this provision.

The Deer Park Independent School District School, which has a "wealth per student" in excess of the statutory cap provided by Education Code section 41.002(a), is required by chapter 41 of the Education Code to reduce its wealth by reducing its taxable property or by increasing its student count. If the Deer Park Independent School District reduces its wealth per student by increasing the student count, the adoption of a maintenance and operations tax rate under article 2784g in excess of $1.50 per $100 valuation would affect its wealth reduction. The actual increase in outlay resulting from a particular tax rate may be computed by applying the relevant formulas set out in Education Code, chapter 41. The statutory methods that achieve wealth equalization by reducing taxable property would not be affected by revenues generated by a tax rate in excess of $1.50 per $100 valuation.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

RICK GILPIN
Deputy Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General, Opinion Committee